**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICARDO ANTHONY JEFFERIES, SR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-3478** |
| | : | |
| **C.O. CAVALERI, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCOTT, J.** **JULY 30th, 2026**

Plaintiff Ricardo Anthony Jefferies, Sr., a prisoner incarcerated at SCI Phoenix, initiated this *pro se* civil action against C.O. Cavalari, C.O. Rienecker, C.O. Pierce, C.O. Davis, C.O. Hunter, Superintendent Joe Terra, and the Pennsylvania Correctional Industries/Commissary ("PCI/Commissary"). (*See* ECF No. 1 at 3-5.) He claims that the correctional officers use electronic cigarettes in prison areas where their use is prohibited, in violation of the Eighth Amendment and state law. (*Id.* at 4.) Jefferies also seeks leave to proceed *in forma pauperis*. (*See* ECF Nos. 5, 6, 8, 9.) The Court will grant Jefferies *in forma pauperis* status. Because the Court concludes that the Eighth Amendment claims for exposure to Environmental Tobacco Smoke ("ETS") are plausible as pleaded against Cavalari, Rienecker, Pierce, Davis, and Hunter, Jefferies will be permitted to proceed on those claims. All other claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Jefferies will be granted the option of proceeding only on the claims that pass statutory screening or filing an amended complaint to attempt to correct the deficiencies noted by the Court in the claims that are dismissed. His motion for appointment of counsel will be held in abeyance until after he has made that election.

## I. FACTUAL ALLEGATIONS[1]

Jefferies is a non-smoker. (Compl. at 31.) Since at least October 2025, Jefferies was housed in the FA Housing Unit at SCI-Phoenix. (*Id.* at 24.) Jefferies alleges that signs warning that smoking/vaping are prohibited were posted at the "(L) side" of the exit door on the FA Unit.[2] (*Id.* at 18.) Despite the signs, the corrections officers Defendants (Cavalari, Rienecker, Pierce, Davis, and Hunter) and inmates vape on the FA Housing Unit. (*Id.* at 10.) Inmates vape inside and outside the cells. (*Id.*) Jefferies contends that he is exposed to vaping all day, from the morning until he goes outside for air at the end of the day. (*Id.* at 8, 10.) He allegedly suffered an allergic reaction from the exposure to second-hand Environmental Tobacco Smoke ("ETS") from the Defendants' and inmates' vaping in the FA Housing Unit, and requires medical care to offset his symptoms. (*Id.* at 6-7.) Since October 2025 the ambient smoke and other pollutants have caused Jefferies to experience coughing, sneezing, shortness of breath, watery eyes, sleeplessness, and frequent headaches. (*Id.* at 10.) Medical has prescribed Claritin to treat his symptoms, which costs Jefferies $5 per month. (*Id.*)

Jefferies submitted several written form requests to staff. On October 31, 2025, he asked Defendant Terra where vaping is permitted at the prison, and a handwritten answer of "Recreation yards" is contained in the response section. (*Id.* at 31.) On January 3, 2026,

---

[1] The factual allegations are taken from Jefferies's form Complaint and attachments. (ECF No. 1 ("Compl.").) The Court deems the entire submission to constitute the Complaint and adopts the pagination supplied by the CM/ECF docketing system.

[2] According to a July 7, 2021 "Information Bulletin" directed to inmates at SCI Phoenix, the use of e-cigarettes is banned inside of buildings and is allowed only in "designated outdoor locations." (Compl. at 29.) At the bottom of the page, the notice is marked "Housing Unit Bulletin Boards (2 per Block) PLEASE POST," and among the parties in the "cc" at the bottom are "Control Centers / East and West Housing Units – Bulletin Boards; Activities – Inmate Channel." (*Id.*)

Jefferies wrote to J. Wychunis, Major of Unit Management, asking what the ETS level is on Housing Unit FA, and stating, "I am experiencing symptoms possibly related to electronic cigarettes vapor, to which I am being taken care of by medical. (Claritin) Staff and inmates regularly vape on the Housing Unit." (*Id.* at 32.) Wychunis apparently answered "IDK Ask Fire Safety." (*Id.*) On February 6, 2026, Jefferies wrote to the Fire Safety Manager about the ETS level in Housing Unit FA, and a non-defendant named Joe Buckley answered, "There is no research to the level of ETS someone can be safely exposed to inside of a building. However; there are ways to lessen the affects [sic] and areas to be mindful of while inside, i.e. adequate ventilation, distance, and time exposed to the particulates." (*Id.* at 33.) Jefferies also filed two grievances, dated October 28, 2025 and January 2, 2026, related to the alleged vaping in housing units by inmates and staff and the sale of e-cigarettes by the commissary.[3] (*Id.* at 24, 35.) His first grievance was upheld in part and denied in part, which subsequent levels of review affirmed. (*Id.* at 25-28.) The second grievance was similarly upheld in part and denied in part, (*id.* at 36), but a final appeal was dismissed because Jefferies had purportedly not furnished a "legible copy of [his] initial grievance" and appeal. (*Id.* at 35-39; 39.)

Jefferies filed this action pursuant to 42 U.S.C. § 1983 against the correctional officer Defendants, Superintendent Terra, and the Commissary. (*Id.* at 3-5.) He attached logs containing dates, times, locations, and names, allegedly reflecting vaping activity by Cavalari, Rienecker, Pierce, Davis, and Hunter on his housing unit. (*Id.* at 9, 19-23.) Jefferies requests monetary damages including $80 to cover the cost of Claritin, "$800,000 the value of physical

[3] The second grievance dated January 2, 2026 does not appear to have been submitted on that date because, in that grievance, Jefferies notes that he had exhausted the first grievance and received a Final Appeal Decision. (Compl. at 35.) The Chief Grievance Officer issued the Final Appeal Decision for the first grievance on January 26, 2026. (*Id.* at 27.)

functioning and to be restored to the original condition of the plaintiff before the incarceration at SCI Phoenix," and $1.6 million in punitive damages "for future harm because of the ETS Health Risk to plaintiff, i.e. medical bills and the total amount of sales from e-cigarettes sold on Housing Unit FA." (*Id.* at 10.) Jefferies also asks for the preservation of security camera footage on Housing Unit FA, and to be free from any retaliation by defendants. (*Id.*)

## II. STANDARD OF REVIEW

Because Jefferies appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Jefferies is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a

---

[4] Because Jefferies is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Federal Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

**1. Claims Against PCI/Commissary**

Jefferies has alleged claims for money damages against PCI/Commissary for deliberate indifference under the Eighth Amendment. (Compl. at 7.) These claims must be dismissed, however, because PCI does not qualify as a "person" under § 1983. *Adams v. Pennsylvania Corr. Indus.*, No. 23-149, 2023 WL 5835302, at *3 (W.D. Pa. Aug. 9, 2023), *report and recommendation adopted,* No. 23-149, 2023 WL 5831644 (W.D. Pa. Sept. 8, 2023). PCI is a subsidiary or entity operated by the Pennsylvania Department of Corrections ("DOC"). *See id.* Claims against the DOC under § 1983 are barred because that agency of the Commonwealth of Pennsylvania is not a person. *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI–Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."); *see also Endrikat v. Little*, No. 23-2167, 2023 WL 8519196, at *3 (3d Cir. Dec. 8, 2023) (*per curiam*) (we concur with the District Court's assessment that Endrikat failed to state a claim with respect to [the Pennsylvania DOC, SCI] Waymart, and the Pennsylvania Board of Probation and Parole, as they are not subject to suit under § 1983) (citing *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973)).

Furthermore, to the extent that Jefferies has also brought state law claims against PCI/Commissary, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b); *Brooks v. Beard*, 167 F. App'x 923, 926 (3d Cir. 2006) (*per curiam*) (noting, with regard to inmate's negligence claims, that "the state has expressly retained its Eleventh Amendment immunity for purposes of federal lawsuits."); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining

that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"). The Court will therefore dismiss the claims against PCI/Commissary with prejudice.

### 2. Official Capacity Claims for Money Damages

In drafting his Complaint, Jefferies indicates that he seeks to name the Defendants in their individual and official capacities. Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, they are also barred by the Eleventh Amendment.[5] *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491

---

[5] To avoid the bar of the Eleventh Amendment, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). Jefferies seeks various types of money damages from the Defendants. (*See* Compl. at 10 (requesting nominal, compensatory, and punitive damages).) Among his requests for money damages, Jefferies also asks that the security camera footage on FA Housing Unit be preserved, and that he remain free from any retaliatory efforts of the Defendants. (*Id.*) The Court understands the first request to restate an evidentiary expectation that a party in possession of evidence preserve what it knows, or reasonably should know, will likely be requested on reasonably foreseeable litigation. *Hohider v. United Parcel Serv., Inc.*, 257 F.R.D. 80, 82 (W.D. Pa. 2009) (explaining a party's affirmative duty). This request does not seek prospective relief based on an "ongoing violation of federal law." *Verizon Md., Inc.*, 535 U.S. at 645. To the extent that Jefferies's prayer for relief includes a request to prevent possible future retaliation by Defendants, the request for injunctive relief cannot proceed. Jefferies alleges no allegations regarding retaliation or threat of retaliation in his entire Complaint. Jefferies has not asserted "that he is under threat of suffering 'injury in fact' that is concrete and particularized," nor is there any suggestion of a "threat [that is] actual and imminent, not conjectural or hypothetical." *Tineo v. Fed. Bureau of Prisons*, No. 19-19403, 2021 WL 689144, at *5 (D.N.J. Feb. 23, 2021) (quoting *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 862 (3d Cir. 2012)). The requests, as presented, are dismissed without prejudice.

U.S. 58, 70-71 (1989). In this case, claims for money damages alleged against the employees of the DOC in their official capacities equate to claims against the Commonwealth that are barred by the Eleventh Amendment. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) (explaining that "Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity." (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). As noted, the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, so it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, the official capacity claims alleged against Cavalari, Rienecker, Pierce, Davis, Hunter, and Terra will be dismissed with prejudice.

### 3. Individual Capacity Claims

Jefferies has brought Eighth Amendment deliberate indifference claims based on ETS exposure against Cavalari, Rienecker, Pierce, Davis, Hunter, and Terra in their individual capacities. (Compl. at 5). ETS exposure by an inmate can state a plausible Eighth Amendment claim. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that an Eighth Amendment claim from ETS exposure may be based on future health and present harm). Of the two types of claims, the first is based on a prospective allegation "that exposure to ETS unreasonably endangers his future health." *Moore v. Durand*, No. 22-2915, 2023 WL 4884855, at *1 (3d Cir. Aug. 1, 2023) (*per curiam*), *cert. denied*, 144 S. Ct. 2535 (2024). With that type of claim, a plaintiff must allege "(1) exposure to 'unreasonably high' levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure." *Id.* The second type of claim addresses a present or pre-existing injury. *Id.* "To allege that ETS exposure has aggravated a pre-existing illness, a plaintiff must show (1) a

sufficiently serious medical need related to the ETS exposure, and (2) deliberate indifference by prison authorities." *Id.* (citations omitted). Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). A plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id.* at 135.

**a. Claims Against Terra**

Jefferies identifies Joseph Terra as "Defendant No. 6," with the other correctional officers individually identified as Defendants "No. 1" through "No. 5." (Compl. at 5.) In a separate section of the Complaint where he makes specific allegations against each Defendant by reference to their number, he repeats a nearly identical paragraph for all Defendants No. 1 through No. 6, claiming that each defendant "[p]ut plaintiff at risk for potential health hazzard [sic]. Knowingly and deliberately violated SCI-prison policy by vaping on the FA Housing Unit." (*See id.* at 6-7.) Jefferies echoes the same allegations for "Defendant No. 6" as the other correctional officers, but he has not specifically alleged any occasion that Terra vaped in the FA Housing Unit. Although he provides detailed logs of alleged vaping activity by Cavalari, Rienecker, Pierce, Davis, and Hunter at various dates, times, and locations in the housing unit from October 2025 through January 2026, Terra's name does not appear among the logs Jefferies provides. (*See id.* at 9, 19-23.) Jefferies has not pleaded a plausible Eighth Amendment deliberate indifference claim with his undeveloped, undifferentiated statement that Terra, in the guise of "Defendant No. 6," personally vaped in the housing unit.

To the extent that Jefferies intends to attribute some level of liability to Terra "by not policing their guards," (*id.* at 7), he has not stated a plausible claim of Terra's personal involvement. Generalized allegations that a supervisory defendant is "in charge of" or

"responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App' x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[6] *Chavarriaga v. New Jersey. Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

---

[6] The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and [assert] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v.*

Jefferies does not make such direct allegations against Terra in the Complaint. While he asserts that the behavior of prison guards was not being policed, (Compl. at 7), that vague statement is not clearly asserted against Terra in particular. Jefferies has attached grievances to his Complaint suggesting that Terra had notice of Jefferies's initial complaints of staff and inmate vaping and of his health symptoms. (*Id.* at 26.) However, a prison official's participation in the grievance process, failure to take action in response to a prisoner's letter about the conditions in which he is confined, or failure to act after becoming aware of an employee's actions, is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013) (dismissing chief grievance officer from action alleging ETS exposure where complaint only alleged that she reviewed grievances concerning exposure); *Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) (*per curiam*) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement" (citing cases)); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("Contrary to Robinson's assertions, awareness of a grievance or complaint after the

---

*Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga*, 806 F.3d at 227.

allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement."). Because it may be possible for Jefferies to alleged additional facts to state plausible claims against Terra, his claims will be dismissed without prejudice, and he will be granted leave to amend these claims.

**B. State Law Claims**

Jefferies alleges state law claims for negligence and intentional infliction of emotional distress against the individual DOC Defendants. (Compl. at 10.) By statute, Pennsylvania law provides the Commonwealth, its agencies, officials and employees acting in the scope of their duties with sovereign immunity from damages claims. *See* 1 Pa. Cons. Stat. § 2310 (establishing immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting waiver of immunity to specific exceptions); *id.* § 8522 (setting forth limited exceptions); *see also Stackhouse v. Com., Pa. State Police*, 892 A.2d 54, 58 (Pa. Commw. Ct. 2006) ("Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages."). "As a general matter, subject only to nine specific statutory exceptions, this sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts."[7] *Taalibuddeen v. Walmart, Inc.*, No. 22-1354, 2026 WL 972896, at *10 (M.D. Pa. Apr. 10, 2026) (quoting *Colon v. Kenwall*, No. 18-840, 2018 WL 5809863, at *6 (M.D. Pa. Nov. 6, 2018))). Because Jeffries's state law claims do not fall within any of the

[7] "The nine exceptions to sovereign immunity relate to: vehicle liability; medical professional liability; care, custody or control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines." *Garcia v. Howell*, No. 800 C.D. 2018, 2019 WL 3986331, at *3 n.3 (Pa. Commw. Ct. Aug. 23, 2019) (citing 42 Pa. Cons. Stat. § 8522(b)).

recognized exceptions, the DOC employees are entitled to immunity on the negligence and intentional infliction of emotional distress claims.

## IV. CONCLUSION

The Court will grant Jefferies leave to proceed *in forma pauperis*. The Court is prepared to serve Jefferies's Eighth Amendment claims for deliberate indifference based on alleged exposure to ETS against Defendants Cavalari, Rienecker, Pierce, Davis, and Hunter. The claims alleged against Terra are dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Claims against Pennsylvania Correctional Industries/Commissary, claims for money damages alleged against Defendants in their official capacities, and state law claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Considering Jefferies's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[8] In the alternative, Jefferies may advise the Court that he seeks to proceed only on the deliberate indifference claims against Defendants Cavalari, Rienecker, Pierce, Davis, and Hunter, which pass statutory screening. Jefferies's Motion for Appointment of Counsel will be held in abeyance at this time.

---

[8] If Jefferies chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim. Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). This means that the submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012). Accordingly, if Jeffries does not include all of his claims in an amended complaint he files, they will be deemed waived.

An appropriate Order follows.

**BY THE COURT:**

**KAI N. SCOTT, J.**